UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARTIN MARIETTA MATERIALS, INC., ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:06-cv-0836-LJM-JMS |
| ) | |
| BDC/CARDINAL ASSOCIATES, LP, ) | |
| Defendant. ) | |

## ORDER ON DEFENDANT'S AND COUNTERCLAIM DEFENDANT'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Martin Marietta Materials, Inc. ("Martin Marietta"), filed this action for breach of contract. Defendant, BDC/Cardinal Associates, LP, ("BDC/Cardinal"), counterclaimed for breach of contract and fraud. The matter comes before the Court on cross-motion for partial summary judgment filed by both parties. For the reasons stated herein, the Court **DENIES** BDC/Cardinal's Motion for Partial Summary Judgment and **GRANTS** Martin Marietta's Motion for Partial Summary Judgment.

### I. BACKGROUND

On July 31, 2000, Martin Marietta and BDC/Cardinal entered into a written mineral lease agreement (the "Lease"). Lease at § 1. Martin Marietta, the lessee under the Lease, agreed to extract sand and gravel ("Product") from the leased property (the "Property") only through the use of an electrically powered floating dredge and remove the Product only by means of an enclosed pipe. *Id.* at § 2. The purpose of this extraction was to create a lake that would eventually be part of a residential development. Lease at § 3. The term of the Lease was "for a period commencing on the

Commencement Date . . . and continuing until the later of (i) February 28, 2006[,] or (ii) five years from the Commencement Date. The Commencement Date shall be the date Lessor acquires fee simple title to the Property." *Id.* at § 3. BDC/Cardinal acquired fee simple title to the Property on August 8, 2000, which made the end of the Lease term February 28, 2006. Under the Lease, Martin Marietta was required to pay $100.00 in yearly rent and a royalty of $0.50 for each ton of Product extracted from the Property. *Id.* at § 4(a), (b).

Pursuant to the Lease, Martin Marietta made an advance payment of the minimum anticipated royalty (the "Advance") agreed upon by the parties, which totaled $1.5 million. *Id.* at § 4(b). This Advance was based on a written estimate of The Schneider Corporation that there was at least 3,000,00 tons of Product on the Property. *Id.* BDC/Cardinal's retention of the Advance was not unconditional. The Lease provided:

> In the event that Lessee, despite exercising good faith efforts to conduct continuous, full-time operations as provided above, is unable, during the Term, to extract at least 3,000,000 tons of Product from the Property, Lessor shall, upon expiration of the Term, refund to Lessee an amount equal to the product of the Royalty Rate and the difference between 3,000,000 [t]ons and the actual tonnage of the Product extracted.

*Id.*

In August, 2004, Martin Marietta abruptly ceased its operations. Martin Marietta's Ans. to Interrogs. No. 17. Martin Marietta alleged that its cessation was due to the discovery of conglomerate material that prevented it from continuing its excavation operations. *See* BDC/Cardinal's Ans., Affirm. Defs., and Am. Countercls. ¶ 20; Martin Marietta's Ans. to Def.'s Countercls. ¶ 20.

On January 12, 2005, Martin Marietta demanded a refund of part of the Advance based on the fact that Martin Marietta had only extracted 2,031,923 tons of Product, while the Advance was

2

calculate on the amount of royalties due for extracting 3,000,000 tons. Ex. 4 of BDC/Cardinal's Br. in Supp. of Mot. for Summ. J. Martin Marietta requested that a refund in the amount of $484,038.50 be paid prior to March 31, 2005. *Id.*

On March 11, 2005, BDC/Cardinal informed Martin Marietta that its understanding of the lease made payment of any refund due by February 28, 2006. Ex. 2 of Martin Marietta's Br. in Opp'n to Def.'s Mot. for Summ. J. BDC/Cardinal also informed Martin Marietta that it would process the payment of the refund no later than the February 28, 2006, deadline. *Id.* However, it appears that BDC/Cardinal later decided that the Lease did not obligate it to pay the refund of the Advance and, in fact, it did not pay the refund.

## II. STANDARD FOR SUMMARY JUDGMENT

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56 (c) ("Rule 56(c)"), which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth

specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996).  It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which she relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).  When the moving party has met the standard of Rule 56, summary judgment is mandatory. *See Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996).  The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996).  Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  "If the nonmoving party fails to establish the existence of an element essential to [its] case, one on which [it] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III. <u>DISCUSSION</u>

### A. BDC/CARDINAL'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The Lease states that it will be governed by the laws of State of Indiana and this is undisputed by the parties; therefore, the Court will apply Indiana law. In Indiana, when "a contract is unambiguous, the intent of the parties should be determined by the language employed in the document." *OEC-Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1314 (Ind. 1996). "The contract must be read as a whole when trying to ascertain the parties' intent." *Id.* at 1315. When a court grants summary judgement in a contract dispute, "it has determined either that: 1) the contract is not ambiguous or uncertain as a matter of law and the trial court need only apply the terms of the contract; or 2) the contract is ambiguous, but the ambiguity may be resolved without the aid of factual determinations." *Bicknell Minerals, Inc. v. Tilly*, 570 N.E.2d 1307, 1310-11 (Ind. Ct. App. 1991). When construing a contract, a court "presume[s] that all provisions were included for a purpose, and if possible [the court] reconcile[s] seemingly conflicting provisions to give effect to all provisions." *George S. May Int'l Co. v. King*, 629 N.E.2d 257, 261 (Ind. Ct. App. 1994). "When a contract contains general and specific provisions relating to the same subject, the specific provision controls." *Id.*

There are two relevant clauses in the Lease that refer to a possible refund of the Advance. The first explains that

> [i]n the event that Lessee, despite exercising good faith efforts to conduct continuous, full-time operations as provided above, is unable, during the Term, to extract at least 3,000,000 tons of Product from the Property, Lessor shall, upon expiration of the Term, refund to Lessee an amount equal to the product of the Royalty Rate and the difference between 3,000,000 Tons and the actual tonnage of the Product extracted.

Lease at ¶ 4(b) ("Advance Refund Clause").  As referenced by the phrase "provided above" in the Advance Refund Clause, the contract states that "Lessee shall operate its business on a continuous, full-time basis in such manner as a prudent businessperson would operate a comparable facility in order to maximize the amount of Product mined from the Property." *Id.*  The only other clause in the contract that refers to a possible refund of the Advance states that

> [l]essee may terminate this Lease without cause by giving Lessor written notice of its intent to terminate ninety (90) days in advance of the termination date.  After the date of termination, neither party will have any rights or obligations under this Lease, except as specifically set forth below:  (a) Lessor shall be deemed to have earned the full Advance and Lessee shall on the termination date pay Lessor any portion of the Advance that may be unpaid.

*Id.* at ¶15 ("Termination Clause").

BDC/Cardinal claims that, in the Advance Refund Clause, "expiration of the Term" means at the end of the Term and not upon sooner termination.  BDC/Cardinal points to other provisions in the contract that refer to "the expiration or sooner termination of the Term" to support its argument that this clause only comes into effect upon the expiration of the Term.  Although BDC/Cardinal spends many pages of its brief developing this argument, its interpretation is clear from the plain language of the clause, and further is not disputed by Martin Marietta.  The Court fails to see why the interpretation of that specific statement is even relevant at this juncture because the Term has now indisputably expired and, if the Advance Refund Clause applies, a refund of the Advance is now due.

BDC/Cardinal next claims that there is no termination clause present in the Lease that entitles Martin Marietta to refund of the Advance.  While it is true that there is no "for cause" termination provision in the Lease, there is a provision allowing for a refund of the Advance on the occurrence

of certain situations. Specifically, this is the Advance Refund Clause. While the Advance Refund Clause does not explicitly reference "termination for cause," the plain meaning of the clause does provide for a refund in limited circumstances.

When read together with the preceding clause, it is clear that upon the expiration of the Term, BDC/Cardinal must refund the difference between the Advance and the amount actually earned to Martin Marietta if Martin Marietta was unable to extract at least 3,000,000 tons of Product, despite exercising good faith efforts to conduct continuous, full-time operations in such a manner as a prudent businessperson would operate a comparable facility in order to maximize the amount of Product mined from the Property. The only purpose this clause could have is to provide the opportunity for a refund of the Advance under certain specific circumstances. Any other interpretation would render the clause nonsensical. *See George S. May Int'l Co.*, 629 N.E.2d at 261 (a court "presume[s] that all provisions were included for a purpose").

To reconcile the Advance Refund Clause with the Termination Clause, the Advance Refund Clause allows a different way for Martin Marietta to terminate the Lease. If Martin Marietta were unable to extract at least 3,000,000 tons of Product from the Property, and could not remove any other amount of Product from the Property, then the Lease allows a refund. A termination in this situation is logical because if Martin Marietta could no longer extract Product from the Property, Martin Marietta would have no further obligations under the Lease.

Martin Marietta does concede that there was some additional Product remaining on the Property when it ceased its operations. Martin Marietta admitted that at least one additional pound of Product could have been removed from the Property. Martin Marietta's Resp. to Def.'s First Req. for Admiss. No. 14. Martin Marietta also admitted that additional Product remained on the Property,

although it qualified this by stating in its "reasonable and prudent business judgment, it was not feasible to extract additional Product from the Property using the agreed upon method of extraction under the terms of the Lease. *Id.* at No. 10.

These admissions are not determinative of the question of whether Martin Marietta operated its business on a continuous, full-time basis in such manner as a prudent businessperson would operate a comparable facility to maximize the amount of Product mined from the Property. Although additional Product did remain on the Property, Martin Marietta claims that, in its reasonable and prudent business judgment, it was not feasible to extract additional product using the means of extraction specified in the Lease. *Id.* BDC/Cardinal disputes this and seems to claim that Martin Marietta abandoned the Lease for economic reasons that do not rise to the standard required in the Advance Refund Clause. *See* BDC/Cardinal's Reply Br. to Martin Marietta's Br. in Opp'n to Def.'s Mot. for Summ. J. at 4, 8-9. Therefore, the Court concludes that there is a genuine issue of material fact as to whether Martin Marietta met the standard set in the Lease to qualify for a refund of the Advance and, as such, the Court **DENIES** BDC/Cardinal's motion for partial summary judgment.

### B. MARTIN MARIETTA'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON BDC/CARDINAL'S FRAUD COUNTERCLAIM

BDC/Cardinal's fraud claim is based upon Martin Marietta's allegedly false statement that it had removed conglomerate material from the Property. In Indiana. "a claimant who brings both a breach of contract and a fraud claim must prove that (1) the breaching party committed the separate and independent tort of fraud; and (2) the fraud result[ed] in injury distinct from that resulting from

the breach." *Am.'s Directories Inc., Inc. v. Stellhorn One Hour Photo, Inc.*, 833 N.E.2d 1059, 1067 (Ind. Ct. App. 2005). Indiana courts have also explained that "[b]reaches of contract will almost invariably be regarded by the complaining party as oppressive, if not outright fraudulent, but merely giving a false reason for breaching the contract does not convert the breach into fraud." *Epperly v. Johnson*, 734 N.E.2d 1066, 1073 (Ind. Ct. App. 2000) (internal citations omitted). Therefore, to survive summary judgment on its fraud claim, BDC/Cardinal must establish that the alleged fraud resulted in an injury different from that resulting from the alleged breach of contract and must demonstrate the five elements of fraud:

> 1) a false statement of past or existing material fact 2) made with knowledge it was false or made recklessly without knowledge of its truth of falsity 3) made for the purpose of inducing the other party to act upon it 4) and upon which the other party did justifiably rely and act 5) proximately resulting in injury to the other party.

*Id.*

BDC/Cardinal claims that Martin Marietta falsely represented that there was a conglomerate present on the Property that prevented Martin Marietta from continuing to extract Product. However, BDC/Cardinal has not pointed to any evidence that supports its claim that Martin Marietta was not truthful in its assertion. To survive summary judgment, the opposing party must submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). There is no such showing made here. Therefore, the Court has no choice but to **GRANT** summary judgment in favor of Martin Marietta on BDC/Cardinal's fraud claim.

## IV. CONCLUSION

For the reasons stated herein, defendant BDC/Cardinal's Motion for Partial Summary Judgment is **DENIED** and Martin Marietta's Motion for Partial Summary Judgment is **GRANTED**. BDC/Cardinal's fraud claim is **DISMISSED WITH PREJUDICE**. BDC/Cardinal's Request for Oral Argument is **DENIED AS MOOT**.

IT IS SO ORDERED this 6th day of July 2007.

_____
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronically Distributed to:

Abigail B. Cella
ICE MILLER LLP
abby.cella@icemiller.com

Thomas Eugene Mixdorf
ICE MILLER LLP
thomas.mixdorf@icemiller.com

Stephen E. Arthur
HARRISON & MOBERLY
sarthur@h-mlaw.com

Raymond A. Basile
HARRISON & MOBERLY
basile@h-mlaw.com

Rory O'Bryan
HARRISON & MOBERLY
rob@h-mlaw.com